## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH IVAN, Individually and on Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BLUE APRON HOLDINGS, INC., MATTHEW B. SALZBERG, ILIA M. PAPAS, MATTHEW J. WADIAK, JARED CLUFF, PABLO CUSSATTI, BENJAMIN C. SINGER, JULIE M.B. BRADLEY, TRACY BRITT COOL, KENNETH A. FOX, ROBERT P. GOODMAN, GARY R. HIRSHBERG, BRIAN P. KELLEY, BRADLEY J. DICKERSON, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, CITIGROUP GLOBAL MARKETS INC., BARCLAYS CAPITAL INC., RBC CAPITAL MARKETS, LLC, SUNTRUST ROBINSON HUMPHREY, INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, CANACCORD GENUITY INC., NEEDHAM & COMPANY, LLC, OPPENHEIMER & CO. INC., RAYMOND JAMES & ASSOCIATES, INC., and WILLIAM BLAIR & COMPANY, L.L.C., | |
| Defendants. | |

Plaintiff Joseph Ivan ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Common stock and Exchange Commission ("SEC") filings by

Blue Apron Holdings, Inc. ("Blue Apron" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Blue Apron pursuant and/or traceable to the Company's initial public offering on or about June 29, 2017 (the "IPO"), seeking to recover compensable damages caused by Defendants' violations of the federal securities laws.

2.       This action is brought on behalf of the Class for violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o.

3.       Pursuant to the Securities Act, Defendants are strictly liable for material misstatements in the Offering Materials issued in connection with the IPO. The Securities Act claims specifically exclude any allegations of fraud, knowledge, recklessness or scienter, do not "sound in fraud" and based solely on strict liability and negligence.

## JURISDICTION AND VENUE

4.       The federal law claims asserted herein arise under §§ 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o.

5.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 22 of the Securities Act, 15 U.S.C. §77v. In connection with the acts, conduct and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the U.S. mails, and interstate telephone communications.

6.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 22 of the

Securities Act because the Company's headquarters are located in this District.

## PARTIES

7.      Plaintiff purchased Blue Apron securities pursuant and/or traceable to the Company's Registration Statement for the IPO and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

8.      Defendant Blue Apron is a Delaware publicly traded company based in New York that provides ingredients and recipe meal kit services, along with wine and kitchen utensils. Blue Apron maintains its principal executive offices at 5 Crosby Street, New York, NY 10013. The Company's common stock is listed and trades on the New York Stock Exchange ("NYSE") under the ticker symbol "APRN."

9.      Defendant Matt Salzherg ("Salzherg") was, at all relevant times, the Founder, President, Chief Executive Officer ("CEO") and director of Blue Apron.

10.      Defendant Bradley Dickerson ("Dickerson") was, at all relevant times, the Company's Chief Financial Officer ("CFO") and Treasurer.

11.      Defendant Pablo Cussatti ("Cussatti") was, at all relevant times, the Company's Senior Vice President of Operations and Fulfillment.

12.      Defendant ilia Papas ("Papas") was, at all relevant times, the Company's Chief Technology Officer ("CTO").

13.      Defendant Matthew J. Wadiak ("Wadiak") was, at all relevant times, the Company's Chief Operating Officer ("COO").

14.      Defendant Jared Cluff ("Cluff") was, at all relevant times, the Company's Chief Marketing Officer ("CMO").

15.     Defendant Benjamin C. Singer ("Singer") was, at all relevant times, the Company's Secretary and general counsel.

16.     Defendant Julie M.B. Bradley ("Bradley") has been a Director of Blue Apron's Board since November 2015 and is a member of the audit committee and compensation committee.

17.     Defendant Tracy Britt Cool ("Cool") has been a Director of Blue Apron's Board since January 2017 and is a member of the audit committee and the nominating and corporate governance committee.

18.     Defendant Kenneth A. Fox ("Fox") has been a Director of Blue Apron's Board since April 2014 and is a member of the audit committee.

19.     Defendant Robert P. Goodman ("Goodman") has been a Director of Blue Apron's Board since November 2015 and is a member of the compensation committee.

20.     Defendant Gary R. Hirshberg ("Hirshberg") has been a Director of Blue Apron's Board since October 2016, and is a member of the compensation committee and the nominating and corporate governance committee.

21.     Defendant Brian P. Kelley ("Kelley") has been a Director of Blue Apron's Board since April 2017, and is a member of the nominating and corporate governance committee.

22.     Defendants Matthew B. Salzherg, Bradley J. Dickerson, Julie M.B. Bradley, Tracy Britt Cool, Kenneth A. Fox, Robert P. Goodman, Gary P. Hirshberg, Brian P. Kelley, and Benjamin C. Singer are collectively referred to herein as the "Individual Defendants."

23.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)     approved or ratified these statements in violation of the federal Common stock laws.

24.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Blue Apron's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

25.     Under the terms and subject to the conditions in an underwriting agreement dated on or about June 29, 2017, the underwriters named below (the "Underwriter Defendants") severally agreed to purchase, and Blue Apron agreed to sell to them, the number of shares indicated below, for which the Underwriter Defendants collectively were paid $16,500,000 in commissions:

| Underwriters[1] | Number of Shares |
| --- | --- |
| Goldman Sachs & Co. LLC | 8,700,000 |
| Morgan Stanley & Co. LLC | 7,200,000 |

[1] As per Blue Apron's Prospectus filed on Form 424B4 with the SEC on June 29, 2017.

| | |
|---|---|
| Citigroup Global Markets Inc. | 4,200,000 |
| Barclays Capital Inc. | 2,700,000 |
| RBC Capital Markets, LLC | 1,800,000 |
| SunTrust Robinson Humphrey, Inc. | 1,500,000 |
| Stifel, Nicolaus & Company, Incorporated | 900,000 |
| Canaccord Genuity Inc. | 600,000 |
| Needham & Company, LLC | 600,000 |
| Oppenheimer & Co. Inc. | 600,000 |
| Raymond James & Associates, Inc. | 600,000 |
| William Blair & Company, L.L.C. | 600,000 |
| Total | 30,000,000 |

26.     Goldman Sachs & Co. LLC acted as an underwriter for Blue Apron's IPO and solicited and sold the number of shares of Blue Apron indicated above. The company provides financial services to corporations, governments, financial institutions, and individuals in Europe, the Middle East, Africa, the Americas, and Asia. Goldman Sachs is headquartered at 200 West Street, New York, NY 10282.

27.     Morgan Stanley & Co. LLC acted as an underwriter for Blue Apron's IPO and solicited and sold the number of shares of Blue Apron indicated above. The company provides financial services to corporations, governments, financial institutions, and individuals in Europe, the Middle East. Africa, the Americas and Asia. Morgan Stanley is headquartered at 1585 Broadway, New York, NY 10036-8293.

28.     Citigroup Global Markets Inc. acted as an underwriter for Blue Apron's IPO and solicited and sold the number of shares of Blue Apron indicated above. Citigroup Global Markets Inc. provides investment banking and financial advisory services. The firm is based in New York, New York. Citigroup Global Markets Inc. operates as a subsidiary of Citigroup Financial Products Inc. The company is located at 390-388 Greenwich Street, New York, NY 10013-2396.

29.     Barclays Capital Inc. acted as an underwriter for Blue Apron's IPO and solicited and sold the number of shares of Blue Apron indicated above. The company is an investment bank and is located at 745 7th Avenue, New York, NY 10019.

30.    RBC Capital Markets, LLC acted as an underwriter for Blue Apron's IPO and solicited and sold the number of shares of Blue Apron indicated above. RBC Capital Markets is a global investment bank providing services in banking, finance and capital markets to corporations, institutional investors, asset managers and governments globally. RBC Capital Markets LLC is headquartered at 200 Vesey Street, 3 World Financial Center, 8th Floor, New York, NY 10281.

31.    Suntrust Robinson Humphrey, Inc. acted as an underwriter for Blue Apron's IPO and solicited and sold the number of shares of Blue Apron indicated above. SunTrust maintains offices at 3333 Peachtree Road North East, Atlanta Financial Center, South Tower, 9th Floor, Atlanta, GA 30326-1070.

32.    Stifel, Nicolaus & Company, incorporated acted as an underwriter for Blue Apron's IPO and solicited and sold the number of shares of Blue Apron indicated above. Stifel is headquartered at 501 North Broadway, One Financial Plaza, St. Louis, MO 63102.

33.    Canaccord Genuity Inc. acted as an underwriter for Blue Apron's IPC) and solicited and sold the number of shares of Blue Apron indicated above. Canaccord Genuity Group Inc. is a global, full-service investment banking and financial services company that specializes in wealth management and brokerage in capital markets. Concord Genuity is headquartered at 99 High Street, Suite 1200, Boston, MA 02110.

34.    Needham & Company, LLC acted as an underwriter for Blue Apron's TPO and solicited and sold the number of shares of Blue Apron indicated above. Needham & Company LLC is headquartered at 445 Park Avenue, New York. NY 10022.

35.    Raymond James & Associates, Inc. acted as an underwriter for Blue Apron's IPO and solicited and sold the number of shares of Blue Apron indicated above. Raymond James has it main office at 880 Carillon Parkway, St. Petersburg, FL 33716-1102.

36.     William Blair & Company. L.L.C. acted as an underwriter for Blue Apron's IPO and solicited and sold the number of shares of Blue Apron indicated above. William Blair & Company is a privately held, employee-owned financial services firm that provides investment banking, equity research, brokerage, asset management and private capital services. Raymond James is headquartered at 222 West Adams Street. Chicago, TL 60606.

37.     The Underwriter Defendants are liable for the false and misleading statements in the Registration Statement. The Underwriter Defendants assisted Blue Apron and the Individual Defendants in planning the IPO and were required to conduct an adequate and reasonable investigation into the business and operations of Blue Apron — a process known as a "due diligence" investigation. The Underwriter Defendants were required to conduct a diligence investigation in order to participate in the IPO. During the course of their "due diligence investigation" the Underwriter Defendants had continual access to confidential corporate information concerning Blue Apron's operations and financial prospects.

38.     In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Blue Apron's lawyers, management and top executives and engaged in "drafting sessions" between at least February 2017 and June 2017. During these sessions, the Underwriter Defendants, Blue Apron, and/or the Individual Defendants made joint decisions regarding: (i) the terms of the IPO, including the price at which Blue Apron shares would be sold to the public; (ii) the strategy to best accomplish the IPO; (iii) the information to be included in the Registration Statement; and (iv) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Blue Apron's management and top executives, the Underwriter Defendants knew of, or in the

exercise of reasonable care should have known of, Blue Apron's existing problems as detailed herein.

39.     Blue Apron is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

40.     Blue Apron's Registration Statement, including the documents it incorporated by reference, contained materially untrue and misleading statements and/or omissions. Defendants negligently allowed the Prospectus to contain materially untrue and misleading statements and/or omissions to the extent that they knew or should have known that the Prospectus was materially misleading, but failed to act in a reasonable manner to prevent the Prospectus from containing materially misleading statements and/or preventing the materially misleading Prospectus from being disseminated. These claims, brought under Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o, are based solely on claims of strict liability and/or the absence of any affirmative defense based on the reasonableness of the pertinent Defendants' investigation into the true facts. These claims are not based on any allegation of fraud, intentional wrongdoing, or severe recklessness.

## SUBSTANTIVE ALLEGATIONS

### A.     Company Background

41.     Blue Apron is a Delaware publicly traded company based in New York that provides ingredients and recipe meal kit services, along with wine and kitchen utensils.

42.     On June 1, 2017, the Company filed a registration statement on Form S-1 with the SEC. The registration statement was subsequently amended, with the final amended registration statement on Form S-1/A filed on June 28, 2017 (collectively, the "Registration Statement"). Blue

Apron filed its final prospectus with the SEC on June 29, 2017 ("Prospectus"). The Registration Statement was declared effected by the SEC on June 28, 2017. The Registration Statement and the Prospectus are collectively referred to herein as the "Registration Statement."

43.     On July 5, 2017, the Company completed its IPO that consisted of a public sale of a 30,000,000 shares of the Company's common stock at $10 per share. After deducting underwriting fees of $16.5 million and before expenses, the Company generated $283 million in proceeds.

### B.   Materially False and Misleading Statements

44.     The Registration Statement, which was signed by each of the Individual Defendants, identifies multiple Company strengths, notably the company's value chain efficiency and superior products. The Registration Statement stated in relevant part:

**Our Strengths**

Our strengths as a company include the following:

*        *        *

• **Hard-to-replicate value chain.**  We have made substantial investments in direct supplier relationships, talent, infrastructure, technology, and data to build an interconnected value chain. We work with over 300 different suppliers and the majority of our food purchases are from suppliers who have entered into exclusivity arrangements with us. These efforts enable us to deliver high-quality food at compelling values, utilizing ingredients that are often unique to us. We have built a diverse team and developed the processes to coordinate closely between such functions as professional chefs, technologists, and supply chain experts. Our value chain is supported by custom-built fulfillment and logistics operations to manage frequently changing, high-throughput, perishable inventory.

*        *        *

• **Superior products at compelling values**
We provide our customers with distinct cooking experiences centered on original recipes that our professional culinary team crafts each week, frequently around specialty ingredients cultivated or produced exclusively for us. In addition, we sell custom Blue Apron wines as well as curated kitchen tools and staples

through Blue Apron Market to further enhance the integrated experience for our customers. ***Because of the efficiencies in our value chain, we are able to provide our products at attractive price points.*** We believe our ingredients are often fresher and of higher quality than those found in traditional and online grocery stores, and consumers also receive ingredients in the pre-portioned amounts necessary to cook our meals. In addition, our recipes often feature specialty ingredients that are not readily found at many traditional grocery stores.

Emphasis added.

45.     Further emphasizing the efficiency and quality of the chain:

We have reimagined the traditional grocery business model and developed an integrated ecosystem that employs technology and expertise across many disciplines. Our supply-demand coordination activities—demand planning, recipe creation, recipe merchandising, and marketing—drive our end-to-end value chain. We gather and infer information about our customers' tastes, food preferences, and order behavior to forecast near-term and long-term demand. We also manage and influence demand, including through our content, proprietary software tools, and e-commerce experience. ***For example, our flexible recipe design process allows us to adjust recipes close to the time of delivery, enabling us to coordinate customer preferences with expected ingredient supply to help mitigate supply chain risks.*** Because our customers select recipes instead of specific ingredients, we can make adjustments while maintaining a consistent, high-quality customer experience.

46.     The Registration Statement also describes Blue Apron's marketing strategy at the time which emphasizes focusing on increasing spend on advertising, along with the strategy's impact on net revenue. In relevant part:

***We spend significant amounts on advertising and other marketing activities***, such as television, digital and social media, direct mail, radio and podcasts, and email, to acquire new customers, retain and engage existing customers, and promote our brand, and ***we expect our marketing expenses to continue to comprise a significant portion o/ our operating expenses***. For 2014. 2015 and 2016, our marketing expenses were $14.0 million, $51.4 million and $144.1 million, respectively, representing approximately 17.9%, 15.1% and 18.1% of net revenue, respectively. ***For the three months ended March 31, 2016 and 2017, our marketing expenses were $25.4 million and $60.6 million, respectively, representing approximately 14.8% and 24.8% of net revenue, respectively***.

*        *        *

During the period from 2014 to 2016, our marketing expenses increased from $14 million to $144 million, an increase of approximately 930%. ***As part of scaling***

11

***our marketing strategy, we have increased marketing expenses related to all three of our major advertising channels (offline media, online media and our customer referral program).*** Beginning in 2016, however, a larger portion of our spending has been on offline channels. ***We believe increased emphasis on offline channels will drive stronger brand awareness, customer engagement and, ultimately, customer retention.*** During 2016, 92% of our net revenue was generated from Repeat Orders, ranging from 89% to 93% across each of the four quarters of 2016. For the three months ended March 31, 2017, 92% of our net revenue was generated from Repeat Orders.

Emphasis added.

47.     The Registration Statement further emphasized the importance of Blue Apron's marketing campaigns to retaining existing clients and attracting new ones, reiterating an increase on its advertising campaigns:

"***Our growth will depend in part on our ability to cost—effectively launch marketing campaigns*** that attract and retain customers and successfully promote awareness of our brand. . . ***We intend to continue investing in marketing and offering promotional discounts to drive customer acquisition.*** We are also increasingly focused on using marketing to drive customer retention, customer engagement and brand awareness, and to support that effort we have expanded our investment in offline paid marketing."

Emphasis added.

*48.*     The Registration Statement also describes the efficiency of the Company's marketing campaigns to achieve (1) a rather low customer acquisition cost of only $94 per customer, (2) for a high cumulative net revenue per customer, which supposedly led Blue Apron to operational efficiency. In pertinent part:

Marketing Efficiency

In managing our marketing expenses, we evaluate the efficiency of our marketing efforts in connection with our goal of maximizing customer lifetime value. ***We evaluate our marketing efficiency primarily from three perspectives: (1) our marketing spend per customer, or Cost per Customer, (2) our cumulative net revenue generated per Customer and (3) the associated cost of goods sold, excluding depreciation and amortization, as a percentage of net revenue, which we view as a key measure of our operational efficiency.***

*      *      *

Using the same methodology as above, cumulative net revenue per Customer for the six months after such Customer's first Order was $402 for 2014 cohorts, $451 for 2015 cohorts and $387 for 2016 cohorts. We believe Cost per Customer accurately represents our average marketing spender Customer for the periods presented. Cumulative net revenue per Customer is driven by our ability to retain and engage Customers once we have acquired them, and therefore we believe cumulative net revenue per Customer accurately portrays Customer behavior relative to the costs incurred to acquire, engage and retain Customers.

*      *      *

We further measure the efficiency of our marketing spend and the lifetime value of Customers by comparing the net contribution per Customer for an applicable cohort to our Cost per Customer.

We calculate the net contribution per Customer for a particular cohort by subtracting the cost of goods sold, excluding depreciation and amortization, associated with Orders by such Customers occurring in a particular cohort from the net revenue associated with such Orders. To do so, we use the average cost of goods sold, excluding depreciation and amortization, for the period in which such Orders occurred. For Orders occurring in 2015 and 2016 and the first quarter of 2017, we use the average per Order cost of goods sold, excluding depreciation and amortization, for the applicable quarter in which such Order occurred, and for Orders occurring in 2014, we use the annual average per Order cost of goods sold, excluding depreciation and amortization. Using this methodology, our net contribution per Customer for the six month period after such Customer's first order was $115 for the period from the first quarter of 2014 to the first quarter of 2017, which is equal to 1.2 times our Cost per Customer of $94 for the corresponding period.

Emphasis added.

49.     The statements contained in ¶44-48 were materially false and/or misleading because the Registration Statement failed to disclose that:

(i)     the Company was suffering from delays at one of its new factory in Linden, New Jersey, which would impact new products roll-out,

(ii)    the Company was experiencing issues related to delivering all orders with all the ingredients,

(iii)    the Company had begun to significantly reduce its spending on advertising thus negatively impacting the Company's net revenue,

(iv)    the Company's strategy was not achieving the desired operational efficiency.

## C.  The Truth Emerges

50.    On August 10, 2017, Blue Apron issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating results for the second fiscal quarter and six month ended June 30, 2017 ("Q2 2017 Press Release"). The press release stated in relevant part:

**Second Quarter 2017 Financial Results**

- Net revenue increased 18% year-over-year to $238.1 million in the second quarter of 2017, driven by an increase in orders and customers. The year-over-year growth rate in the second quarter of 2017 was lower than the year-over-year growth rate of 42% from the first quarter of 2017, driven by a planned reduction in marketing spend of $26.1 million between the first and second quarter.
- Cost of Goods Sold, excluding depreciation and amortization (COGS), increased 28% year-over-year to $163.5 million in the second quarter of 2017, and increased 560 basis points as a percentage of net revenue, ***driven by increased costs associated with the ongoing launch of new infrastructure to support Blue Apron's product expansion initiatives, including the launch of its new Linden, New Jersey facility.*** This increase also reflects higher food costs related to increased use of seasonal produce and other premium ingredients in Blue Apron's recipes.
- Marketing expense was $34.5 million, or 14.5% as a percentage of net revenue, in the second quarter of 2017, compared to $32.0 million, or 15.9% as a percentage of net revenue in the second quarter of 2016. ***Marketing expense in the second quarter of 2017 reflected a significant decrease from the first quarter of 2017, which was $60.6 million, or 24.8% as a percentage of net revenue, driven by a planned reduction resulting from our current marketing strategy***.

Emphasis added.

51.    On August 10, 2017, Blue Apron filed a Form 10-Q with the SEC announcing the Company's financial and operating results for the second fiscal quarter and six months ended June

30, 2017 ("Q2 2017 10-Q"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. Throughout the Q2 2017 10-Q the company ratified its previous statements.

52.     During a conference call to discuss the Company's financial and operating results for the second fiscal quarter and six month ended June 30, 2017 ("Q2 2017 Conf. Call"), Blue Apron's CEO, Defendant Salzberg announced delay in the launch of the Company's Linden's center, stating in relevant part:

> Another factor that impacted the second quarter was the timing of our product expansion. As you know, we are currently in the process of rolling out significant changes to our infrastructure, both from operational and technological perspective, to allow us to offer a more diverse and personalized product assortment to our customers. The reality is we are behind on this work, and that delay impacted our second-quarter results as well as our near-term outlook, which Brad will review shortly.

> ***Much of the delay is related to the launch of our Linden fulfillment center, the newest and most automated facility in our network.*** Linden shipped its first delivery on May 15, but in the second quarter still only represented approximately 3% of our network's national volume.

> As we have moved into the third quarter, we are transitioning more volume from our older Jersey City center to Linden, and Linden will represent a larger percentage of our national volume in the back half of the year. ***During this ramp phase Linden will be operating at a significantly worse margin than our other centers.*** However, we still believe that Linden will ultimately become our most efficient center when fully scaled.

> The delay is related to experiencing greater operational complexity than we initially planned for. We are hyper-focused on maintaining strong performance on metrics like on-time-in-full, or OTIF, to ensure seamless customer experiences, and will be more deliberate in expanding our offerings to customers with the current performance levels. We know lower-than-average OTIF scores directly impact our customer lifetime values, especially for customers early in their lifecycle with us; and we have seen some impact as part of this rollout.

> Since margins and OTIF are both drivers of customer lifetime value, when they are impacted it affects the returns on our acquisition marketing as well. The interconnectedness of these drivers ultimately flows through to growth in financial performance.

15

Emphasis added.

53.     Furthermore, Blue Apron's CFO, Defendant Dickerson, announced delays in rolling out of new product offerings, change in the Company's strategy, and reduction in marketing spend, to thus provide low guidance for the fiscal year 2017. In relevant part, stating:

> In addition to the significant impact to our near-term labor costs included in cost of goods sold, these issues are also having a meaningful impact our revenue expectations, as **_the delays in rolling out our new product offerings create headwinds to acquisition of new customers and challenges around on-time-in-full rates impact retention of new customers._** This recent operational development and its expected near-term effect on net revenue and cost of goods sold, in addition to the smaller raise of capital in our IPO than originally anticipated, has changed our strategic approach in managing the business for the remainder of 2017.

> As Matt mentioned, the interconnectedness of cost of goods sold and on-time-in-full and their effects on marketing efficiency are important drivers of financial performance**_. Because of these factors we will be reducing our marketing spend in the back half of the year, which will in turn have an obvious additional impact to the Company's top-line growth_**. We plan to reevaluate this approach to marketing when such complexities and increased costs are behind us.

> Taking all this into account, our second half of 2017 guidance is as follows: with a cautious view towards the back half of the year, we expect net revenue to be in the range of $380 million to $400 million. This view, based on our current understanding of the complexities in our operation, includes what we believe is a reasonable assumption relative to the continued product expansion and the transition to our Linden facility.

Emphasis added.

54.     At the time of the filing of this action, and following these disclosures, the Company's stock traded at $5.25, a 47% decline from its IPO price of $10 per share just two months before.

55.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

16

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the Company's common stock pursuant or traceable to the Registration Statement issued in connection with the IPO (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

57.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Blue Apron common stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Blue Apron or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Upon information and belief, these shares are held by hundreds if not thousands of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

58.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

59.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities

litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

60.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

(a)     Whether the Securities Act was violated by the defendants;

(b)     Whether the Registration Statement contained false and misleading statements of material fact and omitted material information required to be stated therein;

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

61.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### *Violation of Section 11 of the Securities Act Against All Defendants*

62.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

63.     This Count is asserted by Plaintiff on behalf of themselves and the Class against all the Defendants and is based upon Section 11 of the Securities Act, 15 U.S.C. § 77k.

64.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

18

65.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omission of any material facts and were not misleading.

66.     By reason of the conduct herein alleged, each defendant violated §11 of the Securities Act.

67.     Plaintiff acquired the Company's stock pursuant and/or traceable to the IPO. Plaintiff and the Class have sustained damages. The value of the Company's common stock has declined substantially subsequent to and due to defendants' violations.

68.     At the time of their purchases of the Company's common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the fact upon which this Complaint is based to the time that plaintiff commenced this action. Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff commenced this action.

69.     By reason of the foregoing, Plaintiff and the other members of the Class are entitled to damages as measured by the provisions of Section 11(e), 15 U.S.C. 77K(e), from the Defendants and each of them, jointly and severally.

## COUNT II
### *For Violation of Section 12(a)(2) of the Securities Act Against all Defendants*

70.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71.     Defendants were sellers and offerors and/or solicitors of purchasers of the Blue Apron securities offered pursuant to the Offering. Defendants issued, caused to be issued and

signed the Registration Statement in connection with the Offering. The Registration Statement was used to induce investors, such as Plaintiff and the other members of the Class, to purchase Blue Apron securities.

72.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein. Defendants' actions of solicitation included participating in the preparation of the false and misleading Registration Statement.

73.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

74.     The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects. Had they clone so, these Defendants could have known of the material misstatements and omissions alleged herein.

75.     By reason of the conduct alleged herein, defendants violated §12(a)(2) of the 1933 Act. As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased Blue Apron shares pursuant to the Prospectus sustained substantial damages in connection with their purchases of the shares. Accordingly, plaintiff and the other members of the Class who hold shares issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

76.     This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after Blue Apron securities were sold to the Class in connection with the Offering.

## COUNT III
### For Violation of Section 15 of the Securities Act Against the Individual Defendants

77.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein. This Count is brought pursuant to §15 of the Securities Act against the Individual Defendants.

78.     The Individual Defendants each were control persons of the Company by virtue of their positions as directors and/or senior officers of the Company.

79.     The Individual Defendants were each culpable participants in the violation of §11 of the Securities Act, alleged in Count I above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the IPO to be successfully completed.

80.     None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus and Registration Statement were accurate complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

81.     This claim was brought within one year after the discovery of the untrue statements and omissions in the Prospectus and Registration Statement and within three years after the Company's securities were sold to the Class in connection with the IPO. It is therefore timely.

82.     By reason of the above conduct, for which the Company's is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as the Company's pursuant to Section 15 of the Securities Action, 15 U.S.C. 77o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: August 24, 2017

/s/ Eduard Korsinsky
**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email:ek@zlk.com

# EXHIBIT A



30 Broad Street, 24th
Floor
New York, NY 10004
T:212-363-7500
F:212-363-7171
www.zlk.com

**CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES
LAWS**

I, Joseph Ivan , duly certify and say, as to the claims asserted under the federal
securities laws, that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase the security that is the subject of this action at the direction of
plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including
providing testimony at deposition and trial, if necessary.

4. My transaction(s) in Blue Apron Holdings, Inc. which are the subject of this
litigation during the class period set forth in the complaint are set forth in the chart attached
hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class
representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the
class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the
court, including any award for reasonable costs and expenses (including lost wages) directly
relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.
Executed this August 23, 2017.

Name: Joseph Ivan

Signed:

**Joseph Ivan**
**Blue Apron Holdings, Inc. (APRN) Common Stock**
**Pursuant and/or Traceable to the Initial Public Offering on or about June 28, 2017**

| Date of Transaction | Buy (B) or Sell (S) | Quantity | Price ($) |
|---|---|---|---|
| 6/29/2017 | B | 30 | 10.5674 |